May it please the court, John Jordan on behalf of the defendant Edward Lee Sullivan. So of course I've gotten your Honor's order on the issue, so although it's out of order, I think we should probably address that first if that's what the court wants, since you're obviously interested in that issue. I recognize under Cisneros that this court has found the language at issue in your order has a broadening effect on what particular state convictions might qualify here. However, under any view of how broad that broadening effect is, I don't see how we could reach the two statutes at issue here. We have California Penal Code 261.5d and 288a.b.2. I should note that there are other California statutes that would clearly qualify as predicate child abuse convictions. For example, Penal Code 269a, where the victim has to be under 14. Or the case in Farmer, U.S. v. Farmer, which talked about 288a.b.c.i, I believe. So if we take as given that it's not, let's just assume that it's not a categorical match. So the two predicate offenses are not a categorical match for any of the enhancement statutes listed, aggravated sexual abuse, sexual abuse or abuse of sexual conduct involving a minor award or that laundry list. But if the statute had said if the predicate state offense is aggravated sexual abuse, whatever, we would know, no, this doesn't qualify, assuming it's not a categorical match. But then it doesn't say is, it says relating to. So how do we interpret that relating to language? Now, out-of-circuit cases have interpreted it very broadly. I don't know that we have as of yet. Well, I see out-of-circuit cases, for example, interpreting attempt crimes, which otherwise wouldn't fit in as coming into that. And although it was my individual case, I would no doubt argue against it. But I can see that as a reasonable view. I look at Cisneros where on page 743 they say they think this shows that it was Congress's intent to define sexual abuse as a generic offense, generic offense understood by its ordinary and common meaning. So perhaps I'm tethering that a bit from the formal definition in the federal court, excuse me, the federal statute. But there still has to be. But wasn't, I mean, I thought the purpose of the relating to language was the, to respect the vagaries of state criminal statutes dealing with sexual abuse of minors because of the variations in the wording and so on. And that what Congress was trying to say is we look to state law in those circumstances in order to ask whether or not the conduct relates to sexual abuse of a minor, however a particular state has defined it. Excepting for this argument, that's true and it's broad. Still, these two statutes, frankly, have nothing to do with sexual abuse. They're both the statutory rape and oral copulation, sexual abuse of a minor. How is that not sexual abuse of a minor? Well, under Ninth Circuit case law repeatedly, the two elements themselves, for example, 261.5D, you have to be 21 or over, a minor under 16, and have the unlawful sexual.  Approach. Approach. But, I mean, they're obviously, it's about sex, it's obviously about a minor, and so then the question is abuse, and we've defined, the Ninth Circuit has defined abuse in some cases narrowly, but since this only has to be relating to abuse, why isn't this relating to sexual abuse in minor? Because when this court, when the Ninth Circuit has talked about inherent sexual abuse or per se sexual abuse, over and over again you use the age cutoff of 14. Right. Over and over again. But that's the categorical. I mean, in other words, if the state statutes met those criteria in Estrada-Espinoza, Medina-Villa, et cetera, then we wouldn't have any question. We would say it's a categorical, the predicate crimes are a categorical match for the federal generic offense. So assuming that it's not, we still have to give some import to the language relating to, which is imprecise, but it has to be something more than just being a categorical match. But, again, I think these statutes just don't have any element that would satisfy, no matter how broadly you're going to find the effect, because California Penal Code 61.5 and the other one can be committed by a defendant in California without any factual abuse. It can be consensual sex between teenagers. It doesn't involve what we think what the ordinary meaning of sexual abuse would be. Well, they're both 21 years of age or over, so it's not teenagers, right? That's true. I'm sorry. I meant to bring up another state, Hawaii, and other states where looking last night at the age of consent throughout the country, it seems, although there were some exceptions until recently, every state now has 16 as the minimum age. But many states have these close-in-age exceptions. For example, Hawaii would legalize consensual sex if you were, let's see if I wrote it down correctly. Under Hawaii, I guess it's Penal Code section 707 to 730, under 16 is illegal. However, it becomes legal if the male or female is less than five years older. So this is under 16 and over 21, so it would be illegal under those statutes, right? The problem I think you're having is if we're right that relates to is broader than a categorical match, like we typically engage in in immigration cases, where we're looking to see whether it matches the generic federal common law crime, then abuse, it does include statutory rape. It does include a presumption in the law that a 14-year-old simply cannot consent to sex, and therefore sex with an older male is abuse of a minor involving sexual activity. And isn't that the analysis that we apply here? Actually, I believe I agree with you, except I think the victim has to be under 14. That if it's between 14 and 16, then you fall under, as this Court recognizes, is it Paleo Garcia, one day under 16 does not mean it's sexual abuse. So not categorically. I mean, that's what Paleo Garcia said. It wasn't categorically sexual abuse. But we're not in the categorical. That's what I'm struggling with. And I don't know how to give effect to the language relating to, but we know it has to be something beyond the categorical framework. Otherwise it would be superfluous. It has to be something. So what do you think it is? Accepting that, it still must have some tethering, must have some connection to a crime that always, if you look under the statute, is sexual abuse. You can't be looking at the circumstances. If you start looking at the circumstances of the offense, the age of the actual victim, then I believe you fall out of the exception for Almodinez-Torres under like this case's ruling in DAS, which we're not talking about now because the government dropped that part. It becomes a hybrid offense where the jury has to find whether or not it includes it. So we're looking at the statutory elements, and DECAMP told us you can't look at the facts of the actual prior conviction. So that's definitely out. But just looking at the language of 288A, B2, and 261.5D, I mean, that's where, if we're making a comparison, we still need to figure out how to give effect to, does 261.5D relate to sexual abuse or abuse of sexual conduct involving a minor, which is the language of the enhancement. And you see, again, I would draw a distinction between a statute, which California has, which criminalizes it for 14. Now, it might be that statute does not fit categorically because I see the federal statute has an affirmative defense for reasonable crime, reasonable belief that the child is over 18, there's scientific problems. So it may be for that statute, like, for example, I believe it would be penal code 269A, that I believe would not categorically match, but except in your argument that there's a broadening effect, it would fall under your analysis as qualifying as relating to a sexual offense. But there, you have the element that the victim is 14, per se sexual abuse, therefore, even though the knowledge, there's no requirement that it be knowingly, as there is in federal statute. So in your hypothetical, there's one element that's a categorical match. It's abuse, so it's under 14. But in these cases, there's elements that are a categorical match. It's sexual and it's a minor. So why is it only abuse that's important? What is your reasoning for that? Because the California statute and the statute here don't include any mention of abuse. However, this Court has found, despite that, if it's 14 or under, it's per se abuse. So that supplies the missing, I wouldn't call element, because I'm going to get into category, it applies the missing factor that makes it relating to. Do you want to turn it over? Pardon? Well, you don't have to use it all up. You can reserve it. Okay. You can talk about anything you want. Let me ask you this. One of the issues that is troubling me is the way the district court handled the obstruction enhancement. Essentially, Judge Jensen said, look, I wasn't obstructed. I think that Mr. Sullivan lied, and it was material, but I wasn't fooled for a minute, and I think this enhancement really only applies if we have a jury case. And our case law says that that isn't necessarily so. Well, but I think as part of his reasoning, even if the judge found it to be false testimony, Mr. Sullivan didn't have to use the word false testimony. He did have, I'll say, issues we had him examine. And so there was an issue of whether he willfully intended, whether he was under, since he was convicted, perhaps the judge thought he was deluding himself when he testified that way, but he wasn't intending to lie to the court that he had convinced himself this is what happened. And I think that's a window that he could use. But the judge also found, did he not, that he just didn't find this to be material, that he wasn't impressed by it. It's a case, I really don't know, if I was on the government side, it's kind of the reverse. This is harmless error. I don't know if it's harmless error for the prosecution from the defense side, but this was a, the judge already went below the guidelines. I think he was clearly, Judge Jensen was clearly concerned that this guy was going to get a long prison sentence, even if he departed downward, and that he wasn't interested in bumping the guideline range up another two levels, which would have added another five years to his prison sentence. That would have just triggered my argument in sentencing that he should then take that down, since the guidelines are now advisory. Without telling Judge Jensen how to do his job, the way to do it would have been to go ahead and add the two levels and then vary downward for all the reasons that he said, and we would have been here, the guidelines are not mandatory, and the district court didn't abuse his discretion. But that's not what he did. Well, that's I think where he ended up, and perhaps he did it elegantly, but we'd had a long hearing, and I think he wanted to move things along. It was a long sentence. You know, Judge Jensen, as I'm sure you're aware, is the former D.A. of Alameda County, has big experience in the Department of Justice. Certainly, if I were going to pick any judge in the Northern District of California to do what a case is worth, it would be Judge Jensen. I think in sentencing, you saw in the record, I told him I didn't presume to tell him what the sentence should be. And 25 years is a significant sentence for, this offense is a serious offense, but 25 years was a serious offense. I think Judge Jensen's view was, I want to give him a sentence long enough to keep him in. When he comes out, he'll learn his lesson and perhaps not be a danger. I was going to talk briefly on the double jeopardy issue since it kind of came up in the case before ours. Here in this case, you know, we do have the same exact images. Just one film. There aren't the usual things of multiple things. And under the way the case was indicted... But, I mean, he found that he moved it from the camera or the, yeah, from the video camera to the computer. But the law is a lid that says if you're going to rely on that for the government, you have to specify that in the indictment. I think the problem with the government's argument here is they kind of cheapen or ignore the significance of an indictment and what's going to happen if it's contained in it. I thought this was a persuading the victim to engage. The government's argument was that they include elements that are distinct. So 2251A required proof of persuading the victim to engage in sexually explicit conduct. And 2252A requires proof that Sullivan knew a minor was involved. And so the government argues, well, the Lockberger test is not met. But I think under the indictment and the fear of the case, they've narrowed their case to the exact same elements. And also I think under the persuading, inherent in those arguments is that Mr. Sullivan had to have control, had to exercise control over the film he was producing, which if not possession is constructive possession at a minimum of this. So I think under these facts where Judge Jensen did say quite clearly that the conduct is exactly the same for both offenses. Well, but it isn't. I mean, one of the elements that's different is that in one, the government need only prove that the minor depicted in the video was in fact a minor, whereas in the other, it has to show that the defendant knew that the defendant was a minor. I'm not sure why that's different. But I think it's reversed. It's the defendant's knowledge on one, and the defendant doesn't have that knowledge on the other. It doesn't require it on the other. Persuasion on the other one, too. Yes. But here, again, I would stress that under Lynn where the government could have set out in the indictment its differences here, in fact, it failed to do that and said it was going to do the same conduct for both. So you have to put the defendant on notice in the indictment, and it failed to do so here, I think. But in order to get a conviction, they would have to prove different elements. So does it matter? As long as they proved the distinct elements in the two tests, which they would have to do in order to get a conviction under both, even if the underlying conduct was okay, it was similar, it was the same, it doesn't seem to matter under Blackburger. I don't know if this answers your question, but I think if they go forward, they're allowed to go forward on both. But where the conduct at the trial was the same, then the lesser should be dismissed. Only if it's a lesser-included offense, but here it was not. It's the government's argument, at least. And Blackburger tells us that as long as the elements are different, which they are, even though the conduct may, you know, constitute several different crimes, it's not double jeopardy. Well, my only answer to that, Your Honor, would be that because of the way the indictment was drawn up, they eliminated the difference in those elements and collapsed the two cases into the same elements. The indictment basically was part and parcel of the making of the pornographic film, that he first has to procure the participation of the minor, whereas the other count requires only that he be in possession, knowing that it involves child pornography. Possession would have to be the lesser of the enticement. You can commit the upper charge, but once he films it, as he's filming it, he's necessarily possessing it. Okay. We'll reserve a minute and 44 seconds for rebuttal. Thank you. Ms. Voights. May it please the Court, my name is Anne Voights and I represent the United States. This Court should affirm defendant's convictions as well as the mandatory minimums imposed by the district court, but remand for the district court to properly calculate the guidelines by taking into account defendant's willfully false testimony at trial on material matters. If I might, I'd like to focus on the issue that the Court asked us to consider, the mandatory minimums that the district court did impose. But I would like, if I could, at the end, to address very briefly the issues of the obstruction of justice enhancement, which the district court declined to give, and the double jeopardy issue that defense counsel discussed. With respect to the mandatory minimums that the district court did impose, and with respect to the analysis that's required, we agree that the language relating to is intended to be broad. That is consistent with the structure of the statute itself, which, in terms of the federal offenses that it cites to, it cites to a very broad range of statutes. It's consistent with this Court's precedent holding that when Congress acts, it acts under the jurisdiction of the district court. It's consistent with understanding the meaning that courts have given to the term. And in this case, relating to is a term that courts have consistently construed broadly, as this Court recognized in Cenarius in citing Transworld v. Morales. Congress knows how to say when it wants an exact match. It did so, for example, in Section 3559e. That's not what it did here. And as this Court found in Cenarius and reaffirmed in Farmer and Strickland, the language relating to is intended to be broad. That is also consistent with how other circuits have interpreted this language. As I understand it, every circuit with the exception of the 7th has held that the relating to language is intended to be broad. So that's the 2nd, 4th, 5th, 8th, 10th, and 11th circuits. So let's talk about the abuse component that counsel so artfully made. That's what's – that's what he argues is missing here under the – certainly statutory rape. Because it can be – you can still violate a statutory rape penal code, California Penal Code, and it can be consensual. Correct. What we would submit here is that what this Court has done in the past is it's come up with two definitions for what constitutes sexual abuse. First, the one in Estrada-Espinoza, which sets out four elements, three of which, in fact, are met here by the statute. And then second, the Barone-Medina one. So if I could take those in turn. First, with Estrada-Espinoza, we've said that – the Court has said that sexual abuse for minor requires four elements, a mens rea level of knowingly, a sexual act, third, with a minor between the ages of 12 and 16, and four, an age difference of at least four years between the defendant and the minor. With the exception of the mens rea level of knowingly, all of those are met in that case. And we would submit that the language relating to is certainly broad enough to encompass this core conduct. Even if this Court looks at the Barone-Medina language, there the elements are first, is the conduct prohibited sexual? Second, does the statute protect a minor? And third, does the statute require abuse? And again, the question is, is this a categorical match? You're not required to undertake that analysis. It doesn't have to be an element-by-element match. Here, we would submit that the potential is sufficient, and that's consistent with the cases that have found, for example, that attempt, where there was no actual abuse, still qualify as predicate offenses. It's also consistent with the 5th and 11th circuits where they've held, for example, that lewd proposals to a minor, or just enticing a minor where there is no physical conduct, can nonetheless amount to abuse. And for those reasons, we would submit that the language of 255-1 and 255-2 is intended to be broad. This Court should construe it this way and affirm the district court's conclusion that the mandatory minimums that it did impose were appropriately imposed in this case. If the Court has no further questions on those issues, if I might turn first to the obstruction of justice issue, and then briefly to the double jeopardy issue. With respect to one point the defense counsel raised, he made the point that essentially the district court was saying that this was not material, but we would submit that that's not, in fact, consistent with the district court's ruling in this case. The district court identified three areas of testimony in its findings of fact that it concluded were false or not credible or, in the court's language, not true. First, defendants claim that he was not, in fact, the individual in the film with the minor victim and that he didn't actually take the video. Second, his claim that the victim showed him state-issued identification. And third, his statement about the timing of the videos. The court explicitly made findings that those were not true. They were not credible. And the definition of materiality in which the defense counsel relies is not, in fact, the definition that's included in the sentencing guidelines. Sentencing guidelines define something as material when they say if believed, the testimony would tend to influence or affect the issue under determination. And here, defendants' three sets of lies all went to deflect responsibility onto someone else, to say that he wasn't responsible, that he didn't have the necessary scienter, that he had a good faith belief that she was overage. And all of those support the obstruction of justice. The reasons that the district court relied on for not imposing that are not legally appropriate reasons not to impose it. As the court pointed out, while it can depart under the 3553A factors, the court may not miscalculate the guidelines simply because it either believes that it wasn't obstructed as something which is not required by the guidelines or because it believes that it had too much of an impact on the guidelines range the defendant would receive. If I could very briefly address the double jeopardy issue. As the panelists pointed out, in this case, the statutes required different elements. And so under the Blockberger test, they can, in fact, apply to the same conduct without a constitutional problem. Here, 2251 requires contact with the victim. It requires enticing, persuading, coercing the victim. That is not required under 2252, which, in fact, requires – does not require any contact with the victim. And you don't actually have to have possession. In fact, Buckeley suggests that even if there isn't a video produced, even if there isn't a visual depiction that's actually produced, you can still meet the elements of 2251. 2252 does require possession. It also requires that the defendant know that the victim was underage. Finally, to address one question, even if that isn't met, then the second question is where Lynn comes in. And that is, even if it is a lesser included offense, it can permissibly apply if the conduct that's being punished is different. And here, the distinction between the computer and the camera is sufficient, but we would submit that this Court shouldn't even go that far because Blockberger resolves the issue in this case. If the Court has no further questions, I would be happy to submit. Sotomayor Why should we agree that 21 days is sufficient to examine a computer? Because in this case, unlike the cases on which defendant relies, defendant was a parolee. He was subject to a condition of parole, not just the general condition allowing search of all of his belongings, but also a specific provision allowing for search and seizure of his computer or any telecommunications devices. Unlike the cases where they've found harm, defendant is a parolee and has constitutionally diminished interest to privacy. Second, defendant also consented to the search of his computer. 17 days later. Correct. But at no point did defendant complain or ask for the return of his property. And in Mitchell, Mitchell is different, is what you're telling me. Mitchell was not in custody at the time, the delay, right? Correct. And in this case, defendant was in custody. He consented to the search. They ultimately obtained a warrant and searched it. And there was a reason, the sort of reason that this Court recognized in Aldaz as appropriate, because in this case, the parole department didn't have the capacity to search the computer, so they had to turn it over to the police and then ultimately have it searched there. The Court has no further questions? Apparently not. Okay. Mr. Jordan. I find that, again, picking up on the last case, the judge I don't think made a sufficient finding here excusing the delay. So. I think you said there was no reason ever proffered. There was no reason proffered by the government. So it seems like this issue really wasn't squarely met head on in the district court. I understand the defendant was a parolee and he originally consented, but then there was still delay. Five days after that, right? Right. But then there's the 17 days and the five days. The issue of whether he ever requested a search, he was in custody, so I would argue that makes it harder for him to request the return of the property. I understand. Yeah. I think his circumstance indicates it would be harder for him to request the return since he is in custody and being held in a place more difficult to contact the police. If there are no other questions, I'll submit it on that. Okay. Thank you again for taking the engagement. Of course. We'll take a ten-minute recess and then come back and hear argument in the NVIDIA case.
judges: O'connell, Tallman, Ikuta